**In the United States District Court
for the District of Kansas**

---

Case No. 2:21-cv-2044

---

ERICK TOWET,

*Plaintiff*

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
IMMIGRATION AND CUSTOMS ENFORCEMENT,

*Defendant*

---

**MEMORANDUM AND ORDER**

Plaintiff Erick Towet, proceeding pro se, filed a Petition for Emergency Admission to the United States, seemingly based on 42 U.S.C. § 1983. Doc. 1. Although the pleading details his long-running immigration proceedings, those details are largely irrelevant because the sole relief that Towet seeks is an "emergency order that [the United States] consulate in Nairobi, Kenya issue [Towet] the appropriate advance travel document immediately so that [Towet] may attend a hearing at the immigration court where he has submitted an application for cancellation of removal . . . ." Doc. 1 at 7; *accord* Doc. 15 at 10, 11–12, 13. The Government has moved to dismiss his claims for a variety of reasons, including because Towet has not established that this Court has jurisdiction to award him the relief that he seeks. Doc. 13 at 9–23. For the following reasons, the Government's motion is granted.

**I**

**A**

The Government moves to dismiss Towet's pro se claims under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction and 12(b)(6) for failure to state a claim. Those motions implicate standing, subject-matter jurisdiction, and Rule 8's pleading requirements.

1

**1.** A plaintiff must establish standing to assert a claim. *See Sierra Club v. EPA*, 964 F.3d 882, 890 (10th Cir. 2020). Standing is a doctrine of judicial restraint. It limits federal courts to considering only those disputes that present an active "Case" or "Controversy." U.S. Const. art. III, § 2. That limit on judicial power enhances liberty by restricting the powers that "an unelected, unrepresentative judiciary" may exercise. *Allen v. Wright*, 468 U.S. 737, 750 (1984). Dogged adherence to this limitation is critical because federal courts are not "free-wheeling enforcers of the Constitution and laws." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006). To have standing, a plaintiff must have suffered an injury-in-fact that is fairly traceable to the defendant's actions and is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). This likelihood of redressability must be more than "merely speculative" to satisfy the constitutional requirements of standing. *Id.*

**2.** Similarly, the Constitution limits the subject matter of cases that federal courts may hear. US Const. art. III, § 2. Congress may and hasfurther narrowed federal courts' subject-matter jurisdiction. *See Sheldon v. Sill*, 49 U.S. 441, 449 (1850). These limits are equally as important as the standing doctrine to maintaining the balance of power between the federal government and state governments. Without proper subject-matter jurisdiction, the Court must dismiss a case. Fed. R. Civ. P. 12(h)(3).

The party invoking a federal court's jurisdiction bears the burden of proving it exists. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). If the party fails to do so, the opposing party may move for dismissal, either by facially attacking the jurisdictional grounds alleged in the Complaint or by challenging the alleged factual basis on which subject-matter jurisdiction relies. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack (such as the Government's here, *see* Doc. 13 at 10–23), courts must accept all allegations in the Complaint as true. *Holt*, 46 F.3d at 1002. Courts may refer to evidence outside the pleadings to answer the jurisdictional question. *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).

**3.** To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" from the named defendant. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Tenth Circuit has summarized two "working principles" that underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, the Court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Kan. Penn Gaming*, 656 F.3d at 1214. Second, the Court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts viewed in the light most favorable to the claimant must move the claim from merely conceivable to actually plausible. *Id.* at 678–80. The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). The nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**4.** As noted, Towet is proceeding pro se, which requires a generous construction of his pleadings. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). That generosity means a court should overlook the failure to properly cite legal authority, confusion of various legal theories, poor syntax and sentence construction, or apparent unfamiliarity with pleading requirements. *Id.* But, importantly, it does not permit the Court to construct legal theories on Towet's behalf or to assume facts not pled. *See id.*; *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

**B**

Towet's pleadings are less than clear on the context in which his request arose. Doc. 1. Fortunately, the Government has provided (and Towet does not meaningfully dispute) an adequate explanation of the historical and procedural posture of what led to Towet's current claim and request. Doc. 13 at 3–6.

**1.** Towet, a Kenyan citizen, was admitted into the United States as a student at Wichita State University around August 2009. Doc. 1 at 3, 5; Doc. 13 at 3. A little more than three years later, the United States Department of Homeland Security ordered Towet to appear for an immigration hearing through a Notice to Appear form. Doc. 13 at 3. That form alleged that Towet "did not attend Wichita State University from May 2010 to Present"—a requirement for his temporary student visa. *Id.* The form (dated October 4, 2012) indicated the hearing would be on "a date to be set" at "a time to be set." *Id.* The Kansas City, Missouri, Immigration Court issued a Notice of Hearing on October 11, 2012. *Id.* at 4.

Towet attended four immigration hearings in Missouri between November 6, 2012, and March 21, 2014. Doc. 13 at 4 (citing Doc. 13-2, Caselle Decl.). He subsequently failed to appear at a scheduled hearing on January 19, 2016. *Id.* After Towet failed to establish "exceptional circumstances" for his failure to appear, the Immigration Judge ordered him removed from the United States pursuant to the Immigration and Nationality Act ("INA") § 240(b)(5)(A). *Id.*; *see* 8 U.S.C. § 1229a(b)(5)(A); *see also* Doc. 13-5 (Immigration Judge Decision). Towet was taken into custody on May 5, 2016. Doc. 1 at ¶ 5(i); Doc. 13 at 5.

Towet contends that he had not violated the terms of his student visa because he transferred from Wichita State to Cowley Community College in August 2010. Doc. 1 at ¶¶ 5(vii)–(viii). He alleges that this transfer was properly recorded in Wichita State's Exchange Visitor Information System ("SEVIS"), which Immigration and Customs Enforcement ("ICE") had access to. *Id.* Presumably based on that contention, Towet then filed three (unsuccessful) motions to reopen his case with the Immigration Court. Doc. 13 at 5. He appealed the denial of his third motion to the Board of Immigration Appeals, but it was dismissed in October 2016. *Id.*; *see* Doc. 13-7 (BIA Decision). Thereafter, Towet successfully filed a habeus corpus claim and was released under supervision aroundJuly 2017 in order to obtain the necessary travel documents to return to Kenya. Doc. 1 at ¶ 5(iv); Doc. 13 at 5.

Ultimately, ICE detained Towet again once his removal flight was scheduled and removed him from the United States in January 2021.[1] Doc. 1 at ¶¶ 5(v)–(x). He filed the current case from Kenya.

**2.** Towet brought this action against ICE seeking an order directing the Consulate in Nairobi, Kenya, to issue him travel documents so that he may return to the United States. Doc. 1 at 7. He contends that he was wrongly deported in 2021 and that the ICE agents involved in his immigration case fabricated, misled, and falsified the charges on his initial Notice to Appear. *Id.* at 4. Although his Complaint states that he brings this lawsuit under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, *id.* at ¶ 2, Towet's subsequent materials reiterate that he seeks no relief from the named Defendant; the only relief he seeks is an order directing the United States Consulate in Nairobi (which is not a defendant) to issue appropriate travel documents so he can return to the United States. *Id.* at 7; *see also* Doc. 15 at 13; Doc. 17 at 6. Towet does not ask to reopen his immigration case or for compensation for the alleged § 1983 violation(s).

The Government moved to dismiss this case. In its briefing, the Government argues that Towet does not have a hearing scheduled in the Immigration Court, that this Court lacks jurisdiction to hear these claims, and that Towet's Complaint fails to state a claim. Doc. 13 at 1–2. Towet filed a Response, Doc. 15, and a Supplement to that Response, Doc. 17. Finally, he filed a Motion asking a magistrate court to certify an I-198B immigration form, Doc. 20, and for Summary Judgment in this Court, Doc. 22.

## II

This case contains at least three deficiencies, each requiring dismissal. First, Towet's claims are not redressable because the party from whom he actually seeks relief is not a party to this suit, is not responsible for the wrongs he identifies, and is entrusted with discretion to make the decision without judicial intervention. Second, Towet has not demonstrated that subject-matter jurisdiction exists. Third, there are substantive claims that fail as a matter of law. Any of these deficiencies would be fatal to Towet's claim(s), and each warrants dismissal.

---

[1] Towet's removal to Kenya was scheduled for January 14, 2021. Doc. 13 at 6. ICE revoked Towet's Release on January 1, 2021, and transferred him to Alexandria, Louisiana, before removing him to Kenya on the scheduled flight. *Id.*

**A**

The clearest deficiency is that Towet has not established that his alleged injury is redressable in this suit. In other words, there is a disconnect between the wrong he identifies and the remedy he seeks.

To determine whether an injury is redressable, a plaintiff must establish a relationship between the judicial relief requested and the injury suffered. *California v. Texas*, 141 S. Ct. 2104, 2115 (2021). That connection is lacking here. Towet claims his immigration process reached the wrong result or may have been improperly handled by ICE but asks only for an order directing the United States Consulate in Nairobi, who is not a party to this lawsuit, to issue paperwork so that he can return to the United States to continue contesting his removal. Doc. 1. Towet has failed to identify any legal basis authorizing a federal district court in Kansas to issue any order to the non-party Consulate based on the alleged errors of immigration officials in Kansas City, Missouri. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) ("No federal court has jurisdiction unless it can provide a remedy that can redress the plaintiff's injury."); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 (1992) (concluding that the redressability requirement had not been met where "resolution by the District Court would not have remedied respondents' alleged injury" because it would not have been binding on the agencies); *California*, 141 S. Ct. at 2116 (explaining that an unenforceable injunction fails to fulfill the constitutional redressability requirements).

Even if the Consulate were a party to this suit, Towet's request for an order directing the Consulate to issue travel papers implicates insurmountable separation-of-powers concerns. Generally speaking, federal courts should be cautious when asked to order an executive entity to undertake an act otherwise committed to its sole discretion. *See, e.g., INS v. Chadha*, 462 U.S. 919, 963 (1983) (Powell, J., concurring). Indeed, the Constitution envisions that Congress—not the courts—would regulate the admission of aliens into the United States. *See* US Const. art. I, § 8; *see also Lopez v. INS*, 758 F.2d 1390, 1392 (10th Cir. 1985) (citing *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)). And Congress tasked the United States Citizenship and Immigration Services ("USCIS")—not the courts—with issuing travel papers, including advanced parole documents and re-entry permits. *Travel Documents,* https://www.uscis.gov/green-card/green-card-processes-and-procedures/travel-documents (last visited July 6, 2021). It appears Towet is aware of USCIS's role, given his subsequent Motion asking a magistrate judge to certify one such USCIS travel permit. *See* Doc. 20. To entertain Towet's request would upend this division of responsibility.

**B**

Another deficiency is that, even if Towet had established that his removal violated immigration law, he identifies no basis for this Court to exercise subject-matter jurisdiction over that claim. As a result, dismissal is required.

None of the three statutes that Towet identifies give rise to subject-matter jurisdiction. *Contra* Doc. 1 at ¶ 2. There is no federal question jurisdiction, *see* 28 U.S.C. § 1331, because Congress bars judicial review of cases arising from the Attorney General's decision or action to "commence proceedings, adjudicate cases, or execute removal orders" against an alien. 8 U.S.C. § 1252(g). That type of review is, in essence, what Towet's pleading appears to ultimately seek.[2]

Towet's invocation of the civil rights statute, 28 U.S.C. § 1343, does not help his case. That statute grants federal district courts jurisdiction over certain civil rights claims, but Towet does not appear to raise any claim that would qualify under Section 1343. At best, he mentions 42 U.S.C. § 1983, but that claim (if even intended) is not colorable because Towet does not even conclusorily allege that the defendant violated his constitutional or federal rights as a state actor under the color of state law. *See also* Part II.C., *infra*. Rather, all conduct was undertaken by federal officials acting under federal authority, for which Towet has pursued his administrative remedies. Mentioning Section 1983 is insufficient to confer federal subject-matter jurisdiction. *Cf. Bricker v. Kansas*, Case No. 16-2283, 2017 WL 568679, at *5 n.5 (D. Kan. Feb. 13, 2017) (citing *Shapiro v. McManus*, 577 U.S. 39, 44–45 (2015), and *Baker v. Carr*, 369 U.S. 186, 199 (1962)) (finding that a pro se litigant's mention of a frivolous Eighth Amendment claim did not provide subject-matter jurisdiction).

Likewise, neither the Administrative Procedure Act ("APA"), U.S.C. §§ 701–06, nor the Declaratory Judgment Act, 28 U.S.C. § 2201, provide jurisdiction. Each requires an independent basis for jurisdiction. *See Califano v. Sanders*, 430 U.S. 99, 107 (1977) ("[T]he APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action."); *California*, 141 S. Ct. at 2115 ("[The] Declaratory Judgment Act, 28 U.S.C. § 2201, alone does not provide a court with jurisdiction.").

---

[2] To the extent that Towet seeks a formal review of his removal, as the Government points out, Doc. 13 at 16–17, only a court of appeals may conduct such review. *See* 8 U.S.C. § 1252(a)(5). The only appropriate court would be the Eighth Circuit, as Towet's immigration case was heard in Missouri, not Kansas. *See* Doc. 16 at 2–3.

## C

Finally, jurisdictional concerns notwithstanding, there would be several substantive deficiencies with Towet's claims even if he was pursuing a claim under 42 U.S.C. § 1983. Specifically, it appears that the Complaint fails to assert that a person acting under color of state law deprived Towet of a federal constitutional or statutory right.

For one thing, it is not clear that a Section 1983 claim would be permissible. Such a claim requires identifying a "person" and it is not clear that ICE, a federal executive agency, is a "person" as that term is used in the statute. *Cf. Wheeldin v. Wheeler*, 373 U.S. 647, 650 & n. 2 (1963); *Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997). Even assuming Towet named and served a "person" as a defendant, the Complaint fails to allege that anyone here acted "under color of" state law. Instead, the actions were undertaken pursuant to federal law.

Towet cannot convert his Section 1983 claim into one arising under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). "*Bivens* claims cannot be asserted directly against the United States, federal officials in their official capacities… or federal agencies." *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009). In addition, *Bivens* claims are for money damages, and here, Towet seeks only an injunction compelling the U.S. consulate in Nairobi to issue a visa. *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225 (10th Cir. 2005); *see also Solida v. McKelvey*, 820 F.3d 1090, 1093 (9th Cir. 2016) ("[W]e join our sister circuits in holding that relief under *Bivens* does not encompass injunctive and declaratory relief where, as here, the equitable relief sought requires official government action."); *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities."). Towet asks for something this Court cannot give.

In any event, it is not clear that the relief Towet seeks is an appropriate, or even available, remedy for a Section 1983 claim. Ordering Towet back into the United States (over the objection of the Attorney General) would imply that the immigration decision was invalid—a determination that this Court is not permitted to make. *See* Note 2 *supra*. Judicial review of those decisions in a way that would circumvent USCIS's procedures for issuing travel documents "would necessarily imply the invalidity" of Towet's removal as determined by the Immigration Court. *See* Doc. 13 at 5; Doc. 16 at 3. That implicates concerns similar to those raised in *Heck v. Humphrey*, 512 U.S. 477 (1994).

### III

For the foregoing reasons, the Government's Motion to Dismiss, Doc. 12, is **granted**.

**It is so ordered.**

Date: August 23, 2021                     s/ Toby Crouse
                                          Toby Crouse
                                          United States District Judge